OPINION
Ronald J. Branch, defendant-appellant, appeals the October 12, 2000 judgment of the Franklin County Court of Common Pleas finding him guilty of sexual battery, in violation of R.C. 2907.03, a third-degree felony.
In approximately June 1999, appellant met Jamie Donovan at a bar. On July 12, 1999, appellant visited Donovan's home around 11:00 p.m. to help her with some financial problems. Donovan's friend, Jeannie Nance, was also at Donovan's home. Although Nance had spoken to appellant on the phone earlier that day, the evening of July 12 was the first time she met him. That evening, all three of them sat on Donovan's front porch, drank beer, and talked. After approximately one and one-half hours, appellant and Nance went to the store to purchase more beer. When they returned, they continued drinking and talking until Nance went into the house and fell asleep on the loveseat. Donovan testified that Nance was "pretty well drunk." Donovan and appellant continued to talk for a while longer. Afterwards, Donovan went inside to sleep in her bedroom upstairs and told appellant that he could sleep at her house that evening.
Nance testified that at approximately 4:00 or 4:30 a.m., she woke up and found appellant on top of her having vaginal intercourse with her. Her shirt and bra had been partially pulled up, and her shorts and underwear were halfway down her legs. Appellant told Nance to "shh-shh" and put her arms behind her head. She stated that she pushed appellant off of her and ran upstairs to Donovan's bedroom. She was scared, confused, and crying. Although she awoke Donovan, Nance testified that appellant had followed her upstairs and was standing nearby so she did not immediately tell Donovan what had occurred. After appellant left, Nance told Donovan and then called the police, who arrived ten to fifteen minutes later and took her to the hospital.
Appellant testified that he had fallen asleep downstairs after going over some financial documents with Donovan. He fell asleep for a short time and then awoke. After he went upstairs to check on Donovan, he stated he returned downstairs where Nance initiated sexual activity with him. He testified Nance participated in the intercourse and that it was consensual.
Appellant was indicted on one count of rape, in violation of R.C.2907.02, a first-degree felony, and one count of sexual battery, in violation of R.C. 2907.03, a third-degree felony. A jury trial was held on August 17, 2000, and the jury returned a verdict of not guilty on the rape count and guilty on the sexual battery count. On October 11, 2000, a sentencing hearing was held, at which the trial count sentenced appellant to two years incarceration. The trial court also found appellant to be a sexually oriented offender. Appellant appeals the judgment, asserting the following three assignments of error:
 I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION.
 II. THE JURY VERDICT WAS NOT SUSTAINED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED IN ALLOWING EXPERT TESTIMONY WHICH IMPROPERLY BOLSTERED THE TESTIMONY OF THE COMPLAINTANT [sic].
Appellant argues in his first assignment of error that the trial court erred in overruling his motion to dismiss pursuant to Crim.R. 29. According to Crim.R. 29, a court may order the entry of a judgment of acquittal only if the evidence is insufficient to sustain a conviction of the offense or offenses. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is limited. The question upon review is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Clemons (1998), 82 Ohio St.3d 438, 444.
The indictment charged appellant with a violation of R.C. 2907.03(A)(2), which provides that no person shall engage in sexual conduct with another, not the spouse of the offender, when the offender knows that the other person's ability to appraise the nature of or control his or her own conduct is substantially impaired. Nance testified that she had been sleeping on the loveseat and awoke with appellant on top of her engaging in vaginal intercourse. Appellant placed Nance's hands above her head and was holding her down. She testified that at no time that night did she have any intention of having intercourse with appellant. Donovan testified that when Nance came into her room, she was "hysterical" and eventually told her that when "she woke up * * * he was inside her." Donovan also stated that when she went to bed that night, Nance was already sleeping "pretty soundly."
Despite this testimony, appellant argues there was no evidence presented to establish he possessed requisite knowledge of the victim's state of mind. However, a jury can reasonably conclude that a defendant has knowledge of the victim's substantial impairment and inability to control his/her conduct for purposes of sexual battery under R.C.2907.03(A)(2) when the evidence shows that the victim was in a state of deep sleep or drunkenness and did not consent to intercourse. State v. Tollivar (July 31, 1997), Cuyahoga App. No. 71349, unreported; see, also, State v. Snyder (Feb. 3, 1999), Summit App. No. 18923, unreported (sufficient evidence from which the jury reasonably could have concluded that the defendant engaged in vaginal intercourse with the victim while he knew that she was asleep and was, therefore, either substantially impaired or unaware that defendant was engaging in sexual intercourse with her). Therefore, the fact that appellant knew Nance was asleep when he began to engage in vaginal intercourse with her was sufficient to impute knowledge to him that Nance was substantially impaired and unable to control her conduct. Reviewing the evidence in a light most favorable to the state, as we are required to do, a rational trier of fact could have found beyond a reasonable doubt the elements of the offense of sexual battery. Hence, the court did not err when it denied appellant's Crim.R. 29 motion for acquittal. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the jury's verdict, finding him guilty of sexual battery, was against the manifest weight of the evidence. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Id. at 175.
Appellant sets forth several specific arguments under this assignment of error. Appellant first contends that Nance was not credible, citing that Nance's "own mother did not believe the allegations." However, the actual testimony at trial was that Nance's mother did not believe her allegations until Nance showed her the hospital records. Regardless, whether Nance's mother believed her at first is of dubious persuasive value given that her mother did not testify and also when considering the weight of the other evidence.
Appellant next asserts that "the victim gave only vague allegations as to what happened" and that there was no testimony presented as to her state of mind. However, our review of the record indicates Nance's testimony was abundantly clear as to the events of that night and her perceptions after awakening, and we find nothing vague whatsoever in her descriptions. Further, as to Nance's "state of mind," she testified she had no intentions of having intercourse with appellant at any time, she was confused and scared after she awoke, and she began to cry, all of which were generally corroborated by Donovan's testimony. Donovan further testified that Nance did not make any sexual advances toward appellant at any time during the night, did not make any statements about past sexual encounters, and did not state that "she liked giving blow jobs." Appellant also disingenuously asserted Nance "merely" testified that she was asleep and that there was no testimony presented as to what appellant should have known about her state of mind. To the contrary, the fact that Nance was sleeping when appellant began having intercourse with her quite clearly establishes Nance's "state of mind" at that time. See Tollivar; Snyder, supra.
In addition, Nance also testified that appellant had to hold her down as he proceeded to have intercourse with her, until she could finally push him off to run upstairs, thereby also outwardly conveying her state of mind and disapproval of appellant's actions after she awoke. See State v. Kelsor (Oct. 30, 1998), Hamilton App. No. C-970499, unreported (finding defendant guilty of R.C. 2907.03(A)(2) was not against the manifest weight of the evidence when victim awoke after a night of drinking to find the defendant in bed with her, holding her hands, and forcing her to engage in sexual intercourse).
Appellant also claims the jury may have rendered a verdict based upon their "outrage" that appellant, who is thirty-four-years old and married, would have sexual intercourse with a nineteen-year-old; that appellant purchased alcohol and cigarettes for Nance; and that the sexual conduct took place with minor children present. However, there is nothing in the record to support appellant's contention that the jury improperly took any of this evidence into consideration and that the jury's verdict was the result of any prejudice. The jury was correctly instructed as to what exhibits and testimony admitted during trial were proper evidence for its consideration, and a jury is presumed to follow a trial court's instructions. See State v. Jones (2000), 90 Ohio St.3d 403, 414. Further, we note that it was appellant's counsel who initiated and elicited nearly all of the testimony regarding appellant purchasing alcohol and cigarettes for Nance, the presence of the children in the room, and the fact that appellant was married with children. It is axiomatic that a party cannot claim error concerning the admission of evidence that the party invited or induced. Center Ridge Ganley, Inc. v. Stinn (1987), 31 Ohio St.3d 310, 313.
In sum, this case, as with most sexual assault cases, turned on witness credibility. Appellant claimed the sexual contact was consensual, and Nance testified that it was not. In a manifest weight of the evidence analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Apparently, the jury chose to believe the testimony of Nance and the state's witnesses. Because we cannot say the trial court clearly lost its way in its resolution of these issues of fact and credibility, the jury's verdict was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error that the trial court erred in allowing the state's medical expert, Dr. Thomas Bullock, to bolster the testimony of Nance. The trial court's exercise of discretion extends to both the qualifications of the testifying expert and the subject matter of the expert's testimony. State v. Wages (1993),87 Ohio App.3d 780, 786. An appellate court must not disturb a trial court's decision to admit expert testimony under Evid.R. 702 absent an abuse of discretion. See, e.g., State v. Mack (1995), 73 Ohio St.3d 502,511. The term "abuse of discretion" requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466, 470.
Appellant's reliance on State v. Boston (1989), 46 Ohio St.3d 108 and State v. Moreland (1990), 50 Ohio St.3d 58, is misplaced. These cases concerned a direct statement by an expert that a child declarant was telling the truth (Boston) or lying (Moreland). Neither Boston nor Moreland applies where an expert testifies in general terms concerning the general response of a victim but not the specific credibility of the victim in question. State v. Daniel (1994), 97 Ohio App.3d 548, 563. It has also been held that neither case prohibits an expert from giving testimony that bolsters the credibility of the witness by substantiating his/her version of the events in question. State v. Daws (1994),104 Ohio App.3d 448, 465. In the present case, the doctor testified that Nance was "pretty upset," tearful, and stressed. Thus, Dr. Bullock testified only as to his general observations and did not testify that Nance was reliably reporting what occurred or commenting on her veracity in any manner. Therefore, appellant's third assignment of error is overruled.
Accordingly, appellant's first, second, and third assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 ___________________ BROWN, J.
LAZARUS and BOWMAN, JJ., concur.